```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

MR. APPLIANCE CORP.,            }
                                }
     Plaintiff,                 }
                                }     CIVIL ACTION NO.
v.                              }     09-AR-1137-S
                                }
WOODROW HOLLOWAY, et al.,       }
                                }
     Defendants.                }
```

**MEMORANDUM OPINION**

Before the court are the motions of plaintiff, Mr. Appliance Corp. ("Mr. Appliance"), for a preliminary and a permanent injunction and the motion of defendants, Woodrow Holloway and Deborah Mauldin Holloway ("the Holloways"), and The Appliance Doctor of Central Alabama, Inc. ("Appliance Doctor") (collectively "defendants"), to compel binding arbitration of all claims. Appliance Doctor was created by and is wholly owned by the Holloways. It is, in effect, their *alter ego*. Without ruling on any motions, the court ordered the parties to mediate their dispute pursuant to the court's rules regarding alternative dispute resolution. On October 15, 2009, the case returned to this court after the mediation was unsuccessful. For the reasons that will hereinafter be explained, the court will grant defendants' motion to compel arbitration as to all claims except those seeking injunctive relief, the latter of which will be transferred to the United States District Court for the Western District of Texas, Waco Division, pursuant to the mandatory forum selection clause in

the agreement between the parties.

## Facts and Procedural History

Mr. Appliance is the franchisor of a nationwide system of more than 140 independent franchises, operating throughout the United States and Canada, each of which provides full-service residential and light commercial appliance repair. In 2002, the Holloways entered into a franchising agreement ("FA") with Mr. Appliance entitling them to operate a Mr. Appliance franchise in a territory comprised of Bibb, Shelby, and Tuscaloosa Counties in Alabama and of seven (7) zip codes in Jefferson County, Alabama. This initial FA was later replaced by a second FA signed by the Holloways and Mr. Appliance on June 30, 2006, which was amended on February 11, 2009. Two days prior to signing the second FA, the Holloways also executed a separate agreement in which they agreed that, upon termination of the FA, they would "irrevocably assign" to Mr. Appliance "the telephone listings and numbers used by [the Holloways] in the operation of the franchise," and that the Holloways' "right of use of the telephone listing and numbers shall terminate." (Compl. ¶ 21.) Mr. Appliance knew of the existence of Appliance Doctor as a trade name being used by the Holloways. Although Appliance Doctor was never a formal signatory to the FA, it is bound in equity to the FA, just as is Mr. Appliance.

As part of the FA, as last amended, the Holloways also entered into a covenant not to compete, which, *inter alia*, provides:

2

> . . . Franchisee therefore covenants and agrees that . . . Franchisee shall not, directly or indirectly, as a proprietor, partner, investor, shareholder, memeber, director, officer, employer, employee, principal, agent, adviser, franchisor, franchisee or in any other individual or representative capacity or otherwise:
>
> . . .
>
> 2. for a period of two (2) years immediately following the later of the expiration, termination, or non-renewal of this Agreement for any reason whatsoever or the date on which Franchisee actually ceases operation of the business:
>> (a) engage in or participate in or derive any benefit from a Competitive Business (other than as set forth above) in the territory without Franchisor's prior written consent. If Franchisor grants permission for Franchisee to engage in the operation of a Competitive Business in the territory, Franchisee agrees that Franchisee will pay Franchisor a Franchise Service Fee in accordance with Section 3.C. herein in addition to any other sums due and owing to Franchisor; or
>> (b) employ, seek to employ or otherwise induce any person who is employed by Franchisor or any other franchisee to leave his employment; or
>> (c) interfere or attempt to interfere with any of the business relationships and/or advantages of Franchisor or any other franchisee; or
>> (d) use any Confidential Information whatsoever in any manner which is or is intended to be damaging or derogatory or hinder the relationship of Franchisor with its other franchisees, customers, suppliers or other third parties, or the relationship of any other franchisee with its customers or suppliers; or
>> (e) divert or attempt to divert any customer or business from Franchisor or any other franchisee or solicit or endeavor to obtain the business of any person who shall have been a customer of Franchisee's Franchise.

(Comp. Ex. C, at 26-27.)  It is obvious that Appliance Doctor, a

corporation of which the Holloways are the sole shareholders, was bound by this covenant. Otherwise, the covenant would have been meaningless.

The FA also contains a dispute resolution mechanism designed to avoid litigation. The procedure starts with direct negotiation. If that proves unsuccessful, the parties must move to mediation. If mediation is unsuccessful, the FA then requires binding arbitration. The FA's dispute resolution portion also has a section entitled "**emergency relief**," which reads:

> During the course of a Dispute,[1] should a situation arise relating to the Marks or relating to a situation in which [Mr. Appliance] will suffer irreparable loss or damage unless [Mr. Appliance] takes immediate action, including but not limited to threatened or actual conduct in violation of Sections 9 and 12 of this Agreement, [Mr. Appliance] shall be free to seek declaratory relief, restraining orders, **preliminary injunctive relief** and/or other relief . . . .

(Compl. Ex. C, at 29) (emphasis added). Sections 9 and 12 of the FA concern "Proprietary Information and Non-Competition" and "Franchisee's Obligations on Termination or Non-Removal." Finally, the FA contains a forum selection clause, which reads:

> **AS TO ANY DISPUTE NOT SUBJECT TO BINDING ARBITRATION, FRANCHISEE SPECIFICALLY AGREES THAT ANY ACTION ON SUCH DISPUTE SHALL BE FILED IN A FEDERAL OR STATE COURT LOCATED IN WACO, McLENNAN COUNTY, TEXAS, AND FRANCHISEE HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH**

---

[1] The term "Dispute" is defined in section 13.A of the FA, which states, that the parties "pledge to attempt to amicably resolve any controversy or claim arising out of or relating to [the FA] or the breach thereof or any transaction embodied therein or related thereto ("Dispute") without the necessity of litigation." (Compl. Ex. C, at 27.)

**COURTS AND SPECIFICALLY WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF SUCH COURTS**.

(Comp. Ex. C, at 32) (emphasis in original).

On June 5, 2009, Mr. Appliance filed the instant complaint in this court, seeking injunctive relief in order to enforce the FA's covenant not to compete and to compel the return of any phone numbers currently being used by Appliance Doctor that were previously associated with this particular franchise. Mr. Appliance also seeks monetary damages under a number of theories. With its complaint, Mr. Appliance filed a motion for a preliminary injunction under Rule 65, F.R. Civ. P. In response, defendants filed a motion to compel binding arbitration of all claims. On October 26, 2009, after the unsuccessful mediation, Mr. Appliance renewed its request for injunctive relief by filing a motion for a permanent injunction. Defendants have not yet filed an answer, relying instead on its motion to compel arbitration.

### Discussion

The United States Supreme Court has clearly established that forum selection clauses are to be enforced by their terms unless it is clearly shown that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Eleventh Circuit distinguishes between permissive and mandatory forum selection clauses. In *Global Satellite Communications Co. v. Starmill U.K. Ltd.*, the Eleventh Circuit held

that permissive forum selection clauses "authorize[] jurisdiction in a designated forum but [do] not prohibit litigation elsewhere," whereas mandatory forum selection clauses "'dictate[] an exclusive forum for litigation under the contract.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). The forum selection clause at issue in *Global* provided: "Venue shall be in Broward, County." *Id.* (internal quotations omitted). The Eleventh Circuit found this language to be mandatory, concluding that "because it uses the imperative **'shall,'** [it] is most reasonably interpreted to **mandate venue in Broward County, and Broward County alone**." *Id.* (emphasis added).

A court, in order to effectuate a mandatory forum selection clause, can, pursuant to 28 U.S.C. § 1404(a), *sua sponte* transfer a case to the contractually chosen forum, so long as it is to another United States District Court. *See Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer [s]ua sponte. . . . Cases addressing the question have been surprisingly few, but those that have arisen suggest such power does exist."); *see also Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 n.6 (S.D. Fla. 2009) (acknowledging that district courts have the power *sua sponte* to order cases transfered to a different district to give

6

effect to a forum selection clause); *Stanley Works v. Globemaster, Inc.*, 400 F. Supp. 1325, 1338 (D. Mass. 1975) ("[T]he language of the statute leaves little doubt that it allows transfer on the court's own motion any time the court determines it is convenient or just for it to do so."); *Atlantic City Electric Co. v. I-T-E Circuit Breaker Co.*, 247 F. Supp. 950, 955 (S.D.N.Y. 1965); *Kearney & Trecker Corp. v. Cincinnati Milling Machine Co.*, 254 F. Supp. 130, 134 (N.D. Ill. 1966).

Like the forum selection clause in *Global*, the forum selection clause in the FA at hand uses the imperative word "**shall**," firmly establishing a court in Waco, Texas as the only forum in which certain claims relating to this FA can be litigated.  Put another way, the forum selection clause at issue is **mandatory**.  It will be given effect by this court because its enforcement is neither unreasonable nor unjust, nor is there any claim that the inclusion of the clause was the product of fraud.

By its express terms, this particular clause only applies "to any dispute not subject to binding arbitration." (Comp. Ex. C, at 32.)  Thus, before giving effect to the forum selection clause, this court must determine which, if any, of Mr. Appliance's claims are arbitrable and therefore subject to binding arbitration.  In doing so the court keeps in mind that the contract was drafted by Mr. Appliance.

Mr. Appliance opposes arbitration on three grounds.  First, it

7

claims that defendants have not complied with the procedural prerequisites to arbitration set forth in the FA.  The FA requires that in the event of a dispute the parties must first attempt to solve their differences by negotiation and, if unsuccessful, then mediate the dispute.  After these two efforts have not borne fruit, arbitration is the only means for obtaining certain relief.  At the oral hearing conducted before the mediation was ordered, the court learned that before suit was filed there had been what can fairly be described as "negotiation."  The mediation and arbitration provisions at issue are two way streets.  Before suit was filed neither plaintiff nor defendants demanded mediation or formally invoked the arbitration clause.  In its order of July 20, 2009, this court ordered the parties to do what they were contractually obligated to do.  Mr. Appliance's assertion that the procedural prerequisites to arbitration have not been complied with is without merit.

Second, Mr. Appliance argues that its claims against Appliance Doctor are not arbitrable because Appliance Doctor was not a signatory to the FA, and therefore did not bind itself to arbitration, destroying the necessary mutuality.  While Mr. Appliance is correct that persons or entities generally may not invoke an arbitration clause to which they are not a signatory, the Eleventh Circuit has held that when a party's claims are "'intimately founded in and intertwined with the underlying

8

contract obligations'" they may take advantage of an arbitration clause in that contract. *McBro Planning and Dev. Co. v. Triangle Elec. Const. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984) (quoting *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 841 n.9 (7th Cir. 1981)); *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) ("The McBro court noted the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract, and decided that the claims were "'intimately founded in and intertwined with the underlying contract obligations.'").

Here Mr. Appliance only asserts three claims against Appliance Doctor. Count one of the complaint alleges that Appliance Doctor's use of a former Mr. Appliance telephone number constitutes a violation of the Lanham Act, 15 U.S.C. § 1125(a), because it is misleading and likely to cause confusion. It seeks both injunctive relief and damages in count one. If the Holloways had not agreed irrevocably to assign their telephone numbers to Mr. Appliance upon the termination of the FA, Appliance Doctor, as a separate entity, would be free to use all of its telephone numbers unless it is considered to be a party to the FA. Thus, Mr. Appliance's claim under the Lanham Act against Appliance Doctor flows directly from the Holloways' contractual obligations and is "intimately founded in and intertwined with the underlying contract obligations."

Appliance Doctor may therefore compel arbitration of the monetary claim against it in count one. Counts two and six of the complaint allege common law unfair competition and tortious interference with business and contractual relations against Appliance Doctor. While these claims sound in tort, "it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." *McBro*, 741 F.2d at 344 (citing *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614 (1st Cir. 1975)). Because these claims are also "intimately founded in and intertwined with the underlying contract obligations," Appliance Doctor can also compel arbitration of the damage claims against it in counts two and six.

Finally, Mr. Appliance points out that its claims for injunctive relief are not arbitrable because they are specifically excepted from the FA's dispute resolution mechanism. "Because parties are free to structure their arbitration agreements as they see fit, 'they may limit by contract the issues which they will arbitrate.'" *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Section 13.K. of the FA reserves to Mr. Appliance the right to petition, *inter alia*, for preliminary injunctive relief despite the obligation to arbitrate all other disputes. Section 13.K.

provides:

> During the course of a Dispute, should a situation arise relating to the Marks or relating to a situation in which [Mr. Appliance] will suffer irreparable loss or damage unless [Mr. Appliance] takes immediate action, including but not limited to threatened or actual conduct in violation of Sections 9 and 12 of this Agreement, [Mr. Appliance] shall be free to seek declaratory relief, restraining orders, preliminary injunctive relief and/or other relief, and such actions or lawsuits shall not be considered in violation of the provisions of this Section 13.

(Comp. Ex. C, at 29.)  Sections 9 and 12 of the FA concern "Proprietary Information and Non-Competition" and "Franchisee's Obligations on Termination or Non-Removal," and are the subject of Mr. Appliance's requests for injunctive relief, opening the door to the courthouse and circumventing binding arbitration as to these forms of relief.  But the doors to the courthouse in the Northern District of Alabama are totally closed because the claims for injunctive relief are subject to the mandatory forum selection clause, and because the other claims are subject to binding arbitration.  Mr. Appliance chose the wrong forums.

## Conclusion

For the foregoing reasons, this court will compel arbitration of all claims except those seeking injunctive relief, which said claims will be transferred to the United States District Court for the Western District of Texas, Waco Division.  An appropriate separate order will be entered.

DONE this 30th day of October, 2009.

11

/s/ William M. Acker, Jr.
_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE